SETH R. BAKER *vs.* NEWBERT J. HALL.

Suffolk. January 20, 1893. — March 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Memorandum of Contract — Sketch — Oral Evidence — Specific Performance —Reasonable Time — Waiver of Defect in Deed.*

The rule that, for the purpose of interpreting a document, the court may put itself in the position of the parties, and ascertain by oral evidence their relations to any property which would satisfy the terms of the document, and the presumption that the words used to describe land in a contract to convey the same relate to land owned at the time by the vendor, are to be applied in interpreting a sketch which is part of a memorandum of contract for the sale of real estate.

A. brought a bill in equity against B. to enforce the specific performance of an agreement to purchase certain real estate on or before April 16, 1891. The agreement contained the statement, " provided a release cannot be obtained from present mortgagee to complete transfer as above, the interest shall be allowed said B. at the rate of five per cent per annum until such release is obtained from April 16th, 1891. Other terms and conditions remaining the same." *Held,* that the premises were to be conveyed on or before the day named, unless a release from the mortgages to which the land was subject could not be obtained by that day, and that, in the latter event, the transfer was to be completed whenever, within a reasonable time, the release could be obtained.

A vendee of land, to be conveyed free of encumbrances, who absolutely refuses to accept performance of the contract of sale upon grounds other than the ground of a defect in the deed, cannot afterwards, in an action for the breach of his agreement to purchase, avail himself of any defect in the deed first tendered, a proper deed having been seasonably tendered to him.

BILL IN EQUITY, to enforce the specific performance of an agreement to purchase certain real estate. The answer alleged a tender of performance on the part of the defendant, and a failure on the part of the plaintiff to give a good title within the

time specified, and also set up the statute of frauds. Trial in this court, before *Knowlton*, J., who reported the case 'for the determination of the full court, in substance as follows.

The plaintiff put in evidence an agreement between him and the defendant, dated March 11, 1891, the material portions of which are as follows:

" The party of the first part hereby agrees to sell, and the party of the second part to purchase, or cause to be purchased, a certain estate situated on Beacon Street in the town of Brookline in said Commonwealth and comprising twenty-nine hundred and twenty-five square feet of land with a frontage on said Beacon Street of twenty-nine feet and three inches, and one hundred feet deep, all as per sketch. On the easterly side of said lot, a strip of land

four feet and three inches is to be kept open forever for light, air, passage, and drainage, for the benefit of this lot, and for the grantor, his heirs and assigns, and the grantor agrees to restrict a strip of land four feet and three inches wide on his adjoining land for the uses as above of the first mentioned lot, and for himself, his heirs and assigns, agrees that the same shall always be kept open.

" Said premises are to be conveyed on or before April 16th, 1891, by a good and sufficient warranty deed of the party of the first part, conveying a good and clear title to the same free from all encumbrances except sewer assessments, and for such deed and conveyance the party of the second part is to pay the sum of eighty-six hundred and fifty dollars, of which three hundred dollars have been paid this day, seventeen hundred dollars are to be paid in cash upon the delivery of said deed, and the re-

mainder is to be paid by the note of the party of the second part dated day of delivery of deed, bearing interest at five per cent per annum, payable in or within three months from date, and secured by a power of sale mortgage in the usual form upon the said premises.

" Provided a release cannot be obtained from present mortgagee to complete transfer as above, the interest shall be allowed said Hall at the rate of five per cent per annum until such release is obtained from April 16th, 1891. Other terms and conditions remaining the same. . . .

" The deed is to be delivered and the consideration paid at the registry of deeds in which the deed should by law be recorded, at twelve o'clock, noon, on or before the 16th day of April, 1891, unless the parties hereto agree in writing to some other time and place."

The plaintiff also put in evidence a deed from Emily J. Northend to Seth R. Baker, dated May 31, 1890, and duly recorded, the premises therein being described as follows, viz. :

" Situated in Brookline, being lot A and a part of lot B on a. plan made by A. H. French, dated May 10, 1890, to be herewith recorded, bounded southerly on Beacon Street, two hundred and thirty-three hundredths feet; . westerly on land now or late of Freeman, one hundred feet; northerly, on the remainder of said lot B by a line parallel with and distant one hundred feet northerly from Beacon Street, one hundred feet ; westerly again on said lot B, forty-seven and ninety-one hundredths feet ; northeasterly on land now or late of Selfridge, seventy-eight and twenty-eight hundredths feet; northwesterly on said land of Selfridge, thirty-two and twelve hundredths feet; northeasterly again on land of Griggs, forty-five and seventy hundredths feet ; and easterly on said land of Griggs, sixty-three and eighty-four hundredths feet."

The plan referred to in this deed was put in evidence.

This plan, which is not referred to in the agreement of March 11, 1891, is given on the next page.

The plaintiff also put in evidence a deed of Emily J. Northend to Louisiana K. Freeman, dated June 21, 1889, conveying a lot of land described as follows, viz. :

" A certain lot of land situate on the northerly corner of

Beacon and Centre Streets in Brookline, commencing at the
northeastern corner of Beacon and Centre Streets and running
N. 3° 35' 40" E. ninety-six and $\frac{50}{100}$ feet by the easterly line of
said Centre Street, thence N. 31° 15' W. five and $\frac{5}{100}$ feet by
the said easterly line of Centre Street, thence N. 60° 36' 40" E.
seventy-four and $\frac{96}{100}$ feet, thence S. 3° 36' 40" W. one hun-
dred and forty-three and $\frac{51}{100}$ feet to the northerly side of said
Beacon Street; thence running westerly by the northerly side
of Beacon Street sixty feet to the point begun at; containing
seven thousand three hundred and eighty-nine and $\frac{78}{100}$ square
feet more or less."

The deed of Baker to Freeman, dated October 14, 1890, was
also put in evidence. The land therein conveyed was described
as follows, viz.:

" A parcel of land situated in Brookline, being a part of lot B on a plan made by A. H. French, dated May 10, 1890, recorded with Norfolk Deeds, bounded southerly on Beacon Street fifteen feet; westerly on land of said Freeman one hundred feet; northerly on land now or late of Bates fifteen feet; and easterly on other land of said Baker one hundred feet; containing fifteen hundred square feet. Being a part of the premises conveyed to me by deed of Emily J. Northend, dated May 31, 1890, . . . with the rights, easements, privileges, and appurtenances thereto belonging."

At the time of the agreement the plaintiff owned the lot so conveyed to him by Northend, except the strip conveyed by him to Freeman, as hereinafter described, (of which the premises to be conveyed to the defendant were a small part,) on which there were two mortgages, viz. a first mortgage of $30,000 to one Allen, and a second mortgage of $40,000 to one Andrews. There was evidence that the defendant was fully informed thereof, and also informed that it might not be possible to obtain a partial release of the first mortgage on the premises to be conveyed to him prior to April 16, and that, in consequence of this doubt, there was written into the agreement the following:

" Provided a release cannot be obtained from present mortgagee to complete transfer as above, the interest shall be allowed said Hall at the rate of 5% per annum until such release is obtained, from April 16, 1891, other terms and conditions remaining the same."

There was also put in evidence a deed from Seth R. Baker to Hannahetta C. Cogswell dated          day of          1891, and acknowledged on April 16, 1891, by the grantor, before Henry W. Savage, a justice of the peace. The descriptive portion of the deed was as follows, viz. :

" A parcel of land situated in Brookline, being lot A on a plan made by A. H. French, dated April 3d, 1891, to be herewith recorded, bounded southerly on Beacon Street twenty-nine and twenty-five hundredths feet; westerly on land now or late of Freeman, one hundred and twelve hundredths feet; northerly on land now or late of Bates, twenty-nine and twenty-five hundredths feet; easterly on lot B on said plan by a line

through the middle of a passageway one hundred and twenty-three hundredths feet.

"Being a part of the premises conveyed to me by deed of Emily J. Northend, dated May 31st, 1890.

" The passageway eight and fifty hundredths feet wide, shown on said plan, is to be forever kept open for light, air, drainage, and passage for the use of the owner and occupants of the granted premises, and the grantor, his heirs and assigns."

It was admitted by the defendant that the conveyance of the premises was to be made to Cogswell. It appeared also in evidence that the acknowledgment of said deed of Baker to Cogswell was made before the seals had been affixed thereto, and that the deed had never been reacknowledged.

It was also shown that on April 16 the defendant and Mrs. Cogswell met Mr. Robert F. Herrick, who was authorized to represent the plaintiff, by appointment to pass the papers ; that she had with her the balance of the purchase money, to wit, $8,350, in cash, and she was ready and willing to take the deed of the land and pay the money, and so informed Mr. Herrick. He produced the deed of Baker to Cogswell, having no seals thereon, and also an assignment to himself of a second mortgage, given by Baker to one Andrews, dated February 17, 1891, on premises described as follows, viz. :

" A parcel of land situated in Brookline, bounded southerly on Beacon Street, 185 feet; westerly on land which I conveyed to Louisiana K. Freeman, 100 feet; northerly on land now or late of Bates, 85 feet; westerly on the same, $47\frac{91}{100}$ feet; northeasterly on land now or late of Selfridge, $78\frac{28}{100}$ feet; northwesterly on the same, $32\frac{12}{100}$ feet; northeasterly again on land of Griggs, $45\frac{70}{100}$ feet; and easterly on the same, $63\frac{84}{100}$ feet. Being a part of the premises conveyed to me by deed of Emily J. Northend, dated May 31, 1890, subject to a mortgage of $40,000."

The land conveyed by this mortgage included the land described in said agreement. He produced also a partial release, duly executed by himself, from the second mortgage given by Baker to Andrews of premises described as follows, viz. :

" A parcel of land situated in Brookline, being lot A in a plan made by A. H. French, dated April 3, 1891, to be herewith recorded, bounded southerly on Beacon Street, twenty-nine and

twenty-five hundredths feet; westerly on land now or late of Freeman, one hundred and twelve hundredths feet; northerly on land now or late of Bates, twenty-nine and twenty-five hundredths feet; easterly on lot B in said plan by a line through the middle of a passageway, one hundred and twenty-three hundredths feet. Also the fee and soil in the whole of said passageway, subject to its use as a passageway for all the lots in said plan."

Mr. Herrick further stated, at this interview, that he was unable to procure a release of the first mortgage on the premises referred to in the agreement, as it had not been returned to him from the savings bank, or to produce a deed properly sealed on April 16. He also requested further time in which to pass the papers. The defendant refused to extend the time beyond April 16, and so notified the plaintiff.

There was evidence tending to prove that Mr. Herrick knew early in April that the Essex Savings Bank held the first mortgage, and that on April 12 he sent a partial release to the said savings bank for its execution; that owing to the treasurer's inability to obtain a meeting of the investment committee, this release was not executed till April 17. The premises covered by the release were as follows, viz. :

" Lot A on a plan made by Alexis H. French, dated April 3d, 1891, to be herewith recorded, bounded southerly on Beacon Street, twenty-nine and twenty-five hundredths feet; easterly on lot B on said plan by a line running through the middle of the passageway shown on said plan, one hundred and twenty-three hundredths feet; northerly on land now or late of Bates, twenty-nine and twenty-five hundredths feet; and westerly on land now or late of Freeman, one hundred and twelve hundredths feet. Also the fee and soil of the whole of said passageway, subject to its use as a street or way by the owners or occupants of lot A and B on said plan."

There was evidence tending to prove that on April 18 he called on the defendant at his office and tendered both of the releases, the assignment, and the deed of Baker to Cogswell, and " offered to pay him any interest on his money "; that the defendant replied that " the thing was all over, that he would have nothing to do with the property, that the time was gone by."

It was further shown that on April 22 Mr. Herrick went to Dedham to make a tender, and looked all around the registry of deeds, waited fifteen or twenty minutes, and found no one. Due notice was given the defendant that he would be there to pass the papers.

The judge found as facts, that Mrs. Cogswell, to whom it was agreed the conveyance was to be made, was prepared on April 16 to take the conveyance and pay the balance of the purchase money; that she did everything that was to be done on her part or on the part of the defendant to consummate the transfer on that day; that the plaintiff on that day was not prepared to give a good title to the land; that the deed which he produced had no seals on it; that the defendant refused to extend the time for passing the papers beyond April 16, and so notified the plaintiff; that on April 18 the plaintiff was able to make a good title, and tendered the said deed, to which seals had been affixed, the two releases, and interest on the defendant's money; and that the defendant and Mrs. Cogswell refused to accept the same, or to have anything more to do with the estate. There was also evidence from which the judge found that the plaintiff could not by the exercise of reasonable diligence obtain a release from the mortgage on the property in time to enable him to give a good title prior to April 18, and that on that day and ever since he had been able, ready, and willing to give the defendant a proper deed of and a perfect title to the premises, and that he so informed the defendant; but the defendant refused to accept the property, alleging no other reason for his refusal than that the time for performance of the contract had expired.

No question was made that the description of the property in the deed and releases was according to the understanding of the parties, and was correct, if the contract was sufficient to answer the requirements of the statute of frauds. The reference to a plan in the description was made at the defendant's request, after a survey for the purpose of fixing the boundaries.

The want of seals on the deed was brought to the attention of the plaintiff's counsel at the interview on April 16, but was not referred to afterwards, and was never made a ground of objection to the acceptance of the title.

Against the objection of the defendant, the judge ruled that,

by the terms of the agreement, if a release from the mortgages could not be obtained in time to complete the transfer on April 16, the plaintiff was entitled to a reasonable time after that date in which to complete it; that the description contained in the agreement was sufficient under the statute of frauds to warrant a finding in favor of the plaintiff; and that the fact that the deed was not sealed before it was acknowledged would not deprive the plaintiff of his right to equitable relief under the circumstances of the case; and found that he was entitled to a decree for specific performance of the contract.

The case was reported upon the questions of law involved. If the rulings were all correct, there was to be a decree for the plaintiff; otherwise, such order and decree as justice required.

*D. C. Linscott*, (*F. K. Linscott* with him,) for the defendant.

*G. L. Huntress*, (*H. Albers* with him,) for the plaintiff.

BARKER, J.   1.  While the memorandum gives with precision the dimensions of the lot to be sold, and states that it was situated on Beacon Street, it does not sufficiently identify the land, unless by reference to the sketch.  Without that reference, as the lot to be sold is part of a much larger parcel, there is not enough to indicate from what part of the whole it is to be taken, but its position is made certain, and the lot completely identified by the sketch.

For the purpose of interpreting the document, we may put ourselves "in the position of the parties, and ascertain by oral evidence their relations to any property which would satisfy the terms of the memorandum "; *Farwell* v. *Mather*, 10 Allen, 322, 324; and we are also to presume that the words used to describe the land relate to land owned at the time by the vendor. *Hurley* v. *Brown*, 98 Mass. 545.  The same presumption is, of course, to be applied in interpreting the sketch which is part of the memorandum.  Applying these rules the sketch indicates with certainty that the land to be sold is the westerly end of the vendor's tract, and that it is separated from Centre Street by one lot only, which lot is the property of a third person.  Centre Street is indicated on the west end of the sketch, and adjoining the street upon the east is a lot enclosed, except in the rear, by boundary lines, and marked " Now or formerly of Emily Northend."  Another lot is indicated as adjoining on the east the one

last mentioned, and it is clearly identified as the lot to be sold by its boundary lines and correct figures of dimension, and also by the two strips marked, " Restricted," on its easterly side. Adjoining the second restricted strip is a larger parcel enclosed in boundary lines. Without resort to extrinsic evidence, the fair interpretation of the sketch is that the land to identify which it was drawn is separated from Centre Street by one lot only, — a lot not owned by the vendor, because marked as " Now or formerly of " a third person, — and that it is located at the west end of the vendor's larger tract, of which it is a part. A resort to competent oral evidence would merely corroborate this interpretation of the sketch, by showing that the vendor did not own the one lot shown on the sketch as next to Centre Street ; and that his land adjoined that lot on the east. Nor does the fact, which comes from extrinsic evidence, that all the land shown on the sketch was once owned by Emily Northend raise an ambiguity. The words, " Now or formerly of Emily Northend," are applied by the sketch to a single parcel only, and must be taken in the sense in which the phrase "now or formerly of " is commonly used in conveyancing ; namely, as indicating that the parcel to which it is applied is a monument for the identification of other lands which are under description.

2. The defendant contends that the plaintiff is not entitled to relief because he was not in a condition to complete the conveyance on April 16, 1891. The decision of this question turns upon the construction to be given to the proviso annexed to the clause of the memorandum, fixing the day when the premises were to be conveyed. We are of opinion that the proper construction of the instrument is that the premises were to be conveyed on or before the day named, unless a release from the mortgages to which the land was subject could not be obtained by that day, and that in the latter event the transfer was to be completed whenever, within a reasonable time, the release could be obtained. See *Folsom* v. *McDonough*, 6 Cush. 208. The defendant relies upon the concluding sentence of the proviso, " other terms and conditions remaining the same," in support of his theory ; which is that the transfer of title was to be made on the day named, whether the mortgage had been discharged or not, and that the only effect of the proviso would be to give to

the vendee some allowance of interest, if the release had not been obtained. But the natural signification of the sentence is that the terms of the instrument other than those of the clause to which the proviso applied were to remain the same, and we cannot depart from the natural meaning when the result would be to compel one party to deliver a deed, the covenants of which would be at once necessarily broken, and the other party to pay in full for land mortgaged for much more than its price.

3. It is conceded that the deed without seals was not a good deed on April 16, 1891, but, as by the true construction of the memorandum the plaintiff had a further reasonable time in which to perform his agreement, that fact is not conclusive against him. When the deed had been sealed and was again offered, it was declined because the time had gone by, and with a declaration that the defendant would have nothing to do with the property. If, therefore, the fact that the deed when last offered had not been acknowledged since the seals were affixed made it defective, upon which we express no opinion, the defendant, having absolutely, and upon other grounds, refused to accept performance of the contract of sale, cannot now avail himself of the defect. *Wells* v. *Day*, 124 Mass. 38. See also *Scanlan* v. *Geddes*, 112 Mass. 15; *Linton* v. *Allen*, 154 Mass. 432, 438.

As the rulings of the presiding justice were all correct, according to the terms of the report, there is to be a

*Decree for the plaintiff.*